## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEIL LANTEIGNE, | Case No.: 1:19-cv-12436 |
| *Plaintiff* | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| PROTEON THERAPEUTICS, INC., PAUL J. HASTINGS, TIMOTHY P. NOYES, HUBERT BIRNER, GAREN BOHLIN, JOHN G. FREUND, ARTARA THERAPEUTICS, INC., and REM 1 ACQUISITION, INC., | |
| *Defendants.* | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Neil Lanteigne ("Plaintiff"), by his undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### INTRODUCTION

1.       Plaintiff brings this action against Proteon Therapeutics, Inc. ("Proteon" or the "Company") and Proteon's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a).  Specifically, Defendants solicit the shareholder approval in connection with the proposed acquisition of the Company by ArTara Therapeutics, Inc. ("ArTara") and REM 1 Acquisition, Inc. ("Merger Sub" and together with Parent, "ArTara"), through a Registration Statement filed with the U.S. Securities and Exchange Commission (the "SEC"), that omits material facts necessary to make the statements therein not false or misleading.  Stockholders need this material information to decide whether to vote in favor of the merger.

2.      On September 23, 2019, the Company announced that it had entered into a definitive agreement (the "Merger Agreement"), by which ArTara would acquire all of the outstanding shares of Proteon in an all-stock deal (the "Proposed Transaction").

3.      In connection with the announcement of the Proposed Transaction, on November 7, 2019, defendants filed Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission (the "SEC"). The Registration Statement is materially deficient and misleading because, inter alia, it fails to disclose material information concerning ArTara's financial projections and the analyses performed by the Company's financial advisor, H.C. Wainwright & Co., LLC ("Wainwright"). Without this material information, the Company's stockholders will be forced to decide whether to approve the merger based upon materially incomplete and misleading information. The failure to adequately disclose such material information constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act.

4.      For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws.  Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws.  Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under §§ 14(a) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa.  The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      The Court has personal jurisdiction over each of the Defendants because Proteon is headquartered in this District, and each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has

sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because Proteon is headquartered in this District, and Defendants have received substantial compensation by doing business in this District via Proteon.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of Proteon common stock.

9.      Defendant Proteon is a Delaware corporation and maintains its principal executive offices at 200 West Street, Waltham, Massachusetts 02451.

10.      Defendant Paul J. Hastings is Chairman of the Board of the Company.

11.      Defendant Timothy P. Noyes is Chief Executive Officer and President of the Company.

12.      Defendant Hubert Birner is a director of the Company.

13.      Defendant Garen Bohlin is a director of the Company.

14.      Defendant John G. Freund is a director of the Company.

15.      Defendants Freund, Bohlin, Birner, Noyes, and Hastings are collectively referred to as "Individual Defendants" and/or the "Board."

16.      ArTara Therapeutics, Inc. is a rare and specialty diseases therapeutics company focused on optimizing product candidates for patients suffering from diseases where there is a significant unmet need. Its current development programs focus on the treatment of rare diseases in structural and connective tissues, as well as rare hepatology/gastrointestinal and metabolic disorders with investigational candidate TARA-002 for the potential treatment of lymphatic malformations and IV Choline Chloride for the potential treatment of intestinal failure-associated

liver disease, or IFALD. ArTara is party to the Merger Agreement and is named as a defendant herein solely for the purpose of providing full and complete relief.

17.     Defendant Merger Sub is a party to the Merger Agreement and is named as a defendant herein solely for the purpose of providing full and complete relief.

## FURTHER SUBSTANTIVE ALLEGATIONS

**Company Background**

18.     Until recently, Proteon was focused on the development of novel, first-in-class pharmaceuticals to address the medical needs of patients with kidney and vascular disease.

19.     On March 28, 2019, Proteon announced that its second Phase 3 trial, PATENCY-2, for its product candidate, vonapanitase, in the treatment of radiocephalic fistulas did not meet its co-primary endpoints of fistula use for hemodialysis (p=0.328) and secondary patency (p=0.932).

20.     In April 2019, Proteon started taking steps to reduce operating expenses while the Company began evaluatying its strategic alternatives, including the possibility of a merger or sale of Proteon. Specifically, on April 4, 2019, following recent disappointing results for the company's drug pipeline, the Board voted to establish the Strategic Advisory Committee, consisting of directors Garen Bohlin, John Freund and Paul Hastings. The purpose of the Strategic Advisory Committee was to provide additional board oversight and assistance to Proteon's management in completing a review of Proteon's strategic options.

21.     Shortly thereafter, Proteon's management commenced discussions with multiple investment banking firms regarding a potential engagement to assist Proteon in conducting a broad strategic review. Ultimately, Proteon elected to sign an engagement letter with Wainwright considering their strength of experience with recent reverse merger transactions involving life science companies, as well as the competitiveness of their fee. On April 15, 2019, Proteon

announced via press release that the Proteon Board had decided to explore all strategic alternatives for Proteon, to reduce its employee headcount and spending on operations in order to preserve its cash resources, and that it had retained Wainwright as its financial advisor to assist in the strategic review process.

22.     Following the public announcement on April 15, 2019, Wainwright initiated a process of broad outreach to potential merger candidates, including companies that were believed to be considering going public through an initial public offering, companies that had recently completed financing rounds with known crossover investors, companies that might be considering financing rounds with known crossover investors, and companies that were pursuing the development of product candidates in therapeutic areas garnering significant attention from life science investors. As part of this process, outreach was completed to a total of 49 companies. Wainwright asked that proposals to merge with Proteon be submitted by May 10, 2019.

23.     On May 21, 2019, during a telephonic meeting of the Strategic Advisory Committee, representatives of Wainwright discussed the status of outreach efforts, noting that out of the 49 companies contacted, 26 of these companies had signed confidentiality agreements and 15 of these companies had submitted proposals to acquire Proteon.

24.     Out of the 15 proposals that were submitted, Wainwright identified ArTara and three additional companies (referred to herein as "Company B", "Company C" and "Company D", respectively) as potential finalists, as well as, one other private biopharmaceutical company ("Company A") as an alternate to the finalists. Proposals from ArTara, Company A, Company B, Company C and Company D each focused on a variety of indications, and their initial proposals offered Proteon's stockholders post-closing stock ownership percentages ranging from 4% to 20% in the combined entities.

25.     Specifically, ArTara's initial proposal assigned a value of $12 million for Proteon, $60 million for ArTara, and included a $40 million round of financing to be closed concurrent with a merger closing, thereby resulting in a post-closing ownership percentage of 10.7% for Proteon's current stockholders, 53.6% for ArTara's current stockholders and 35.7% for the investors in the $40 million financing round. Company A's initial proposal assigned a value of $17.0 million for Proteon and $150.0 million for Company A, but did not include any financing proposal, thereby resulting in a post-closing ownership percentage of 10.2% for Proteon's current stockholders and 89.8% for Company A's current stockholders. Company B's initial proposal assigned a value of $10.0 million for Proteon and $190.0 million for Company B, included a proposed $40 million financing but without any details or investor names, which resulted in a post-closing ownership percentage of 4.2% for Proteon's current stockholders, 79.2% for Company B's current stockholders and 16.6% for the investors in the $40.0 million financing. Company C's initial proposal assigned a value of $10.0 million for Proteon and $144.0 million for Company C, but did not include any financing proposal, which resulted in a post-closing ownership percentage of 6.0% for Proteon's current stockholders and 94.0% for Company C's current stockholders. Finally, Company D's initial proposal did not assign a value for Proteon or for Company D and did not include any financing proposal. However, Company D's proposal assigned a post-closing ownership percentage of 20% for Proteon's current stockholders and 80% for Company D's current stockholders.[1]

26.     On June 3, 2019, Company C notified Wainwright that it was no longer interested in pursuing this opportunity.

_____

[1] Ultimately, Company D never submitted a revised proposal and therefore, in early August, Proteon management removed Company D from the list of companies actively being considered.

27.     During the months of June and July, four additional privately-held biopharmaceutical companies (referred to herein as "Company E", "Company F", "Company G" and "Company H", respectively) were introduced to Proteon as potential merger partners. Given the prospects of the merger candidates' clinical programs and their respective strong management teams, Proteon signed confidentiality agreements, which did not contain standstill provisions, with each of these four additional companies and subsequently received preliminary oral proposals from each later in July 2019.

28.     On July 25, 2019, Proteon management updated the Proteon Board as to progress made since the June 26, 2019 Proteon Board meeting. The update identified ArTara and two other leading candidates, Company A and Company B as offering the greatest benefit to Proteon stockholders, and three alternative candidates, Company E, Company F and Company H, as potential merger partners should their impending bids be competitive. While none of the of the alternative candidates, Company E, Company F, or Company H, had submitted written proposals to Proteon at this time, they had indicated might do so soon.

29.     Ultimately, on August 7, 2019, Company H submitted a written proposal to Proteon which included a valuation for Proteon of $13.5 million, a valuation for Company H of $161.5 million and a $20 million round of financing to be invested concurrent with the merger closing. This proposal would result in Proteon's ownership percentage to be equal to 6.9% of the combined company when including the $20 million financing.

30.     On August 16, 2019, Proteon received a revised proposal from ArTara, which included a revised $42.5 million funding term sheet for consideration. The value assigned to Proteon was $7.25 million, down from $8.7 million, and corresponded to a percentage ownership

for Proteon of the combined company remaining unchanged at 10.4% when including the higher financing amount.

31.     That same day, Proteon management also received a revised proposal and associated funding term sheet from Company H. Company H's revised proposal valued Proteon at $12.5 million, which resulted in a 6.4% ownership of the combined company after including the $20 million financing.

32.     On August 28, 2019, Proteon's management circulated a draft of the term sheet to ArTara that contemplated: (a) a shortened exclusivity period from 45 days to a fixed date of September 15, such that until such time neither Proteon nor ArTara would be permitted to negotiate with other companies for a potential transaction; and (b) a change in the notification provision that did not require either company to notify the other if a proposal for a potential alternative transaction was received from a third party. Finally, the term sheet also communicated Proteon's request that a designated Board member be permitted to serve until the 2022 annual meeting of the combined company.

33.     On August 30, 2019, a telephonic call was held with the Proteon Board to discuss the ArTara term sheet for a reverse merger and the proposed exclusively period to negotiate a merger agreement with ArTara until midnight on September 15, 2019. Following a discussion concerning the benefits of the ArTara proposal and the downsides of the outstanding proposals from Company H, Company B, and other interested entities, Proteon and ArTara executed a non-binding term sheet.

34.     Negotiations between ArTara and the Company progressed rapidly throughout the first half of September. On September 16, 2019, Proteon management informed the Proteon Board that, while significant progress had been made in negotiating the Merger Agreement with ArTara,

additional time was needed to negotiate the Merger Agreement for consideration by the Proteon Board. Accordingly, the Proteon Board authorized Proteon's management to extend the exclusivity period with ArTara until midnight on September 19, 2019 to finalize the draft of the Merger Agreement.

35.     Finally, early on the morning of September 22, 2019, a revised set of transaction documents, including the Merger Agreement and the financing documents, were circulated to the Proteon Board, summaries of the material terms of the Merger Agreement and the material terms of the financing documents, proposed resolutions for consideration that evening by the Proteon Board, and the materials prepared by Wainwright in connection with Wainwright's presentation to the Proteon Board.

36.     Later that day, the Proteon Board held a telephonic meeting for the purpose of reviewing and discussing the final terms of the Merger Agreement. During the meeting, Wainwright reviewed with the Proteon Board Wainwright's financial analysis of the consideration provided for in the Merger Agreement, and their conclusion that the exchange ratio was fair, from a financial point of view, to Proteon. Following this presentation, the Proteon Board unanimously determined that the transactions contemplated by the Merger Agreement were fair to, advisable and in the best interest of Proteon and Proteon's stockholders, approved and declared advisable the Merger Agreement and the transactions contemplated therein, including the Merger, and determined to recommend, upon the terms and subject to the conditions of the Merger Agreement, that Proteon's stockholders vote to approve the Merger Agreement and the transactions contemplated therein, including the Merger and the issuance of shares of Proteon common stock to ArTara's stockholders pursuant to the Merger Agreement and the reverse split.

37.     On the afternoon of September 23, 2019, the Merger Agreement was signed and

Proteon and ArTara issued a joint press release publicly announcing the signing of the definitive

Merger Agreement.

38.     The press release states in pertinent part:

WALTHAM, MA and  NEW YORK, NY, September 23rd, 2019 — Proteon
Therapeutics, Inc. ("Proteon") (Nasdaq: PRTO), a company developing novel,
first-in-class pharmaceuticals to address the medical needs of patients with kidney
and vascular diseases, and ArTara Therapeutics, Inc. ("ArTara"), a private clinical
stage biopharmaceutical company developing treatments for rare  and specialty
diseases with significant unmet therapeutic needs, announced today that they have
entered into a definitive agreement in which a wholly-owned subsidiary of Proteon
will merge with ArTara in an all-stock transaction. The merged company will focus
on advancing ArTara's pipeline of transformative late-stage, de-risked rare and
specialty diseases assets. Upon stockholder approval, the combined company is
expected to operate under the name ArTara Therapeutics, Inc. and trade on the
Nasdaq Capital Market under the ticker symbol TARA.

A syndicate of healthcare dedicated investors have concurrently entered into a stock
purchase agreement to invest $42.5 million in the combined company. This
financing will help fund the development of ArTara's lead assets TARA-002 and
IV Choline Chloride and is expected to be consummated concurrently with the
closing of the transaction.

ArTara is a clinical stage therapeutics company focused on acquiring and
modernizing high-potential, de-risked product candidates for rare and specialty
diseases. ArTara's current development programs focus on the treatment of rare
diseases in structural and connective tissues as well as rare hepatology and
metabolic disorders.

ArTara's lead program TARA-002, is a follow-on biologic of the innovator therapy
OK-432, an inactivated Group A streptococcus bacterial preparation approved in
Japan for the treatment of lymphangiomas along with several other specialty
indications. ArTara plans to pursue development of TARA-002 for the treatment of
lymphangiomas which are rare, typically congenital, malformations of the
lymphatic vasculature.  TARA-002 has been awarded orphan drug designation by
the US FDA for lymphangiomas.  TARA-002's innovator therapy, OK-432, has
been interrogated in dozens of additional indications through investigator-
sponsored studies around the world and ArTara will conduct preliminary
investigations into a number of these indications after advancing the
lymphangiomas program.

ArTara's second asset, IV Choline Chloride, has shown promising results in a

Phase 2a study in Intestinal Failure Associated Liver Disease ("IFALD"). IV Choline Chloride is a phospholipid substrate replacement therapy for choline deficient patients with hepatic steatosis and cholestasis associated with dependence on long-term parenteral nutrition. ArTara's IV Choline Chloride has been awarded Orphan Drug Designation by the US FDA.

"We are excited about the opportunity for this merger, which will allow ArTara to help fill the void in treatment options for these two rare diseases and potentially address additional significant unmet need in other disease areas" said Jesse Shefferman, CEO of ArTara. "Following an extensive and thorough review of strategic alternatives, we strongly believe this transaction with ArTara is the best path forward and has the potential to deliver significant and near-term value to Proteon Therapeutics' stockholders," said Timothy Noyes, CEO of Proteon.

**About the Proposed Transaction**

Under the terms of the merger agreement, on a pro-forma basis after closing of the merger and the closing of the financing, the current Proteon stockholders will own approximately 10% of the combined company, while ArTara security holders and new investors will own approximately 90% (on a fully diluted basis). The actual allocation between the two groups of stockholders is subject to adjustment based on Proteon's net cash prior to the completion of the Transaction.

The transaction has been unanimously approved by the Board of Directors of both companies, and is expected to close by year end 2019, subject to customary conditions, including approval by Proteon and ArTara stockholders and the satisfaction of the conditions under the stock purchase agreement. The investment pursuant to the stock purchase agreement is expected to be consummated concurrently with the closing of the transaction.

H.C. Wainwright & Co. is acting as financial advisor to Proteon, and Morgan, Lewis & Bockius LLP is acting as legal counsel to Proteon. Ladenburg Thalmann & Co. Inc. is acting as financial advisor to ArTara, and Cooley LLP is acting as legal counsel to ArTara.

**Management and Organization**

The combined company will be led by Jesse Shefferman, ArTara Chief Executive Officer, and will be headquartered in New York, NY. The board of directors is expected to be composed of 7 members, with 5 such members designated by ArTara, 1 such member designated by Proteon, and Mr. Shefferman.

**The Registration Statement Misleads Proteon Stockholders by Omitting Material Information**

39.      As noted previously, on November 7, 2019, the Company filed the Registration Statement with the SEC. As alleged below and elsewhere herein, the Registration Statement contains material misrepresentations and omissions of fact that must be cured to allow Proteon stockholders to make an informed shareholder vote. Specifically, as discussed below, the Registration Statement omits material information regarding ArTara's financial projections and the analyses performed by the Company's financial advisor. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Proteon stockholders. Accordingly, Proteon stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

40.      Proteon engaged Wainwright to render financial advisory and investment banking services to Proteon, including an opinion to the Board as to the fairness, from a financial point of view, to the holders of Proteon common stock of the merger consideration in the Proposed Transaction. The Registration Statement provides that ArTara management provided to Wainwright and the Board unaudited, non-public financial projections with respect to ArTara for each of the calendar years ending December 31, 2020 through 2035 (the "ArTara financial projections"). The ArTara financial projections were prepared by ArTara as part of ArTara's ongoing strategic planning processes. In conducting the analysis as to the fairness, from a financial point of view, to Proteon of the exchange ratio, Wainwright evaluated the stand-alone valuations of Proteon and ArTara. Wainwright then evaluated the potential valuation of the combined company and compared it to the pro forma ownership of the combined company by the stockholders of Proteon immediately prior to the Merger pursuant to the terms of the Merger

Agreement. Accordingly, projections for ArTara were provided to Wainwright, and Wainwright utilized these projections for its financial analyses, therefore it is vital that Proteon stockholders have all information.

41.     Despite the foregoing, ArTara's unlevered free cash flows, as calculated by Wainwright, and the line items used to calculate them have not been disclosed.  Furthermore, the Registration Statement fails to disclose all line items used to calculate EBIT and a reconciliation of all non-GAAP to GAAP metrics. These omissions render the descriptions of the financial projections and of Wainwright's financial analyses and opinion materially incomplete. These forecasts and projections are material to Proteon shareholders and must be disclosed so that the Company's shareholder can evaluate both the Company's future as a standalone entity and the valuation analyses performed by Wainwright.

42.     In addition to the material omissions identified above, the description in the Registration Statement of Wainwright's fairness opinion and the underlying analyses omits key inputs and assumptions used by Wainwright in its Discounted Cash Flow Analysis that underlie the analyses. Specifically, the Registration Statement fails to disclose: (i) ArTara's projected unlevered cash flows and all underlying line items; (ii) the terminal values of ArTara; (iii) ArTara's estimated net operating profit after taxes; (iv) Wainwright's basis for using an assumed terminal valuation range of 4x and 12x EBIT; and (v) the individual inputs and assumptions underlying the 20.0% to 30.0% discount rate and the perpetuity growth rate of between 1% and 3%. Without this information, Proteon's public shareholders are unable to understand the financial advisor's fairness opinion and determine what weight, if any, to place on that opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly

alter the total mix of information available to Proteon shareholders that is relevant to their determination.

43.     When a bankers' endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses are crucial to a fair presentation of the material facts.   Furthermore, the disclosure of projected financial information provides stockholders with the best basis to project the future financial performance of a company, and allows stockholders to understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  This information is therefore material, and must be disclosed if Proteon stockholders are to make a fully informed decision.  The omission of this information renders the statements made concerning the financial advisors' analyses and opinions materially misleading.

44.     Without such undisclosed information, Proteon stockholders cannot evaluate for themselves whether the financial analyses performed by the financial advisor were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which financial advisor's opinion and analyses should factor into their decision whether to tender their shares or pursue their appraisal rights.

45.     The omission of this information renders certain portions of the Registration Statement false and/or materially misleading in contravention of the Exchange Act including, inter alia, the following sections of the Registration Statement: (i) "Opinion of the Proteon Financial Advisor;" and (ii) "Certain Unaudited ArTara Financial Projections."

46.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

47.     Without disclosure of the above referenced information, the Registration Statement violates SEC regulations and materially misleads Proteon stockholders. Accordingly, Plaintiff seeks, among other things, the following relief: (i) an injunction of the Proposed Transaction; (ii) rescission of the Proposed Transaction in the event that it is consummated; and (iii) rescissory or other appropriate damages resulting from Defendants' misconduct.

48.     Defendants are, and have at all relevant times been, in full possession of the undisclosed facts, and have negligently, recklessly, knowingly and/or intentionally omitted this information from the Registration Statement.

## CLAIMS FOR RELIEF

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder)**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

51.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

52.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

53.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things the valuation analyses performed by the Company's financial advisor, Citi.

54.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore reckless, as they had reason to know that material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to disclose such information to Proteon common stockholders although they could have done so without extraordinary effort.

55.     The Individual Defendants knew or recklessly disregarded that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants reviewed and relied upon the omitted information

identified above in connection with their decision to approve and recommend the Proposed Transaction.

56.     The Individual Defendants were, at the very least, extremely reckless in preparing and reviewing the Registration Statement.  Indeed, the Individual Defendants were intimately involved in the process leading up to the signing of the Merger Agreement and the preparation and use of the Company's financial projections.

57.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and other Proteon stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff and the Proteon stockholders have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Proteon stockholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

58.     If the Proposed Transaction is completed without the material misstatements and omissions being cured, Plaintiff will suffer substantial economic harm by being deprived of his interest in the Company for inadequate consideration.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of Proteon within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Proteon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Proteon, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

61.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Proteon, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

63.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Proteon stockholders will be irreparably harmed.

66.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment and relief as follows:

A.     Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.     Directing the Individual Defendants to account to Plaintiff for all damages suffered as a result of the Individual Defendants wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  December 2, 2019                    **LEVI & KORSINSKY, LLP**


By:  *s/  Shannon L. Hopkins*
Shannon L. Hopkins (BBO No. 657485)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email:  shopkins@zlk.com


**OF COUNSEL**

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice)*
Elizabeth K. Tripodi (to be admitted *pro hac vice)*
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
        etripodi@zlk.com

*Attorneys for Plaintiff*